UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENComplaintOLA DIVISION

| | |
|---|---|
| STEVEN ADAMS,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CAPT. JOSEPH I. SCHROCK and SGT. MICHAEL C. TONA, CENTURION OF FLORIDA, LLC, MHM HEALTH PROFESSIONALS, LLC,<br><br>　　　Defendants. | Case No. 3:23-cv-3882-MCR-HTC |

**PLAINTIFF'S RESPONSE TO RULE 12(b)(6) MOTION TO DISMISS BY DEFENDANTS' CENTURION AND MHM (ECF 11)**

Plaintiff Steven Adams responds to the Rule 12(b)(6) Motion to Dismiss the Complaint (ECF 11) by Defendants Centurion and MHM, and would show:

1. Defendants move to dismiss the complaint on the following grounds:

    a. The purported delays in care do not rise to deliberate indifference;

    b. No link is pled between failures to treat and Defendants' policies;

    c. No distinction is made between acts of Centurion and MHM.

2. Plaintiff will respond below as follows:

    a. Failure to follow up outside care constituted deliberate indifference;

    b. Plaintiff has pled a link between failures to treat and Defendants' policies;

    c. Plaintiff has adequately pled a distinction between Defendants;

    d. To the extent that Plaintiff's case is inartfully or insufficiently pled, Plaintiff could amend the Complaint to cure any such defects.

1

## INTRODUCTION

Defendants offer a highly-colored account of Plaintiff's complaint in which they ignore or minimize large parts of Plaintiff's specific allegations. Plaintiff submits that the best source of facts alleged in the Complaint is the Complaint itself. However, to summarize the salient facts from the Complaint, Plaintiff submits as follows:

On May 16, 2021, Plaintiff was attacked by his cellmate while he slept. (ECF 1 at ¶ 39). The cellmate used a heavy metal lock to smash Plaintiff's face, breaking the bridge of his nose completely off his face. He was found unconscious and rushed to Sacred Heart Hospital in Pensacola. Multiple surgeries were performed except for a surgery to his damaged left eye, which had to be deferred. Medical staff could look through the hole where his nose had been and see the top of his tongue. (Id. at ¶¶ 40-49). Plaintiff was returned to the Florida prison system where he was allowed to languish with incomplete surgical care as follow-up deadlines were ignored.[1] (Id. at ¶¶ 55-60). An examination for Plaintiff's unfinished eye care was done on July 12, 2021, and a follow-up was scheduled for five months later in October. No exam was done in October and as the months went by, Plaintiff was told he was getting too close to his release date in March to receive further care and so the second exam never took place. (Id. at ¶¶ 61-65). Plaintiff, now no longer a prisoner, has been diagnosed with PTSD, he is legally blind in his left eye and has blurred vision in his right, and his face is permanently disfigured. (Id. at ¶¶ 70-75).

---

[1] Plaintiff could further plead that the skin has grown over stitches in the roof of his mouth because they were not timely removed in missed follow-up care.

Defendants failed to provide Plaintiff with timely necessary care while he was still in the custody of FDC. He has lost substantial vision because of the failure to provide follow-up care.[2] He has serious ongoing pain and dysfunction. Centurion and MHM have a pattern of delaying and denying inmates care to avoid costs, especially when inmates approach their release date. (Id. at ¶¶ 101-106).

## MEMORANDUM OF LAW

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation omitted), which can allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). This "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). The facts must allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Waldman*, 871 F.3d

---

[2] Defendants characterize this sustained refusal to follow-up with necessary eye care for nearly a year as "a missed appointment for eye care." (ECF 11 at 7). Plaintiff is now legally blind in his left eye and can no longer follow his profession as a brick mason. Defendants speak of his need for dental care as if it were unrelated to the repair of his face from the assault by his cellmate.

at 1289. The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,679(2009)). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil rights or municipal liability claims. See *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

For the reasons stated below, the Court should deny Defendants' motion.

**A. Plaintiff's Allegations Rise to the Level of Deliberate Indifference**

Plaintiff's Complaint meets the liberal standard to state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Mr. Adams has also alleged facts sufficient to establish municipal liability for these constitutional violations under *Monell*. Mr. Adams has alleged facts showing that Centurion's customs and practices of inadequate care, its failure to adequately supervise provision of medical care, directly caused violations of Mr. Adams's constitutional rights. He has therefore adequately alleged municipal liability for denial of constitutionally required medical care.

Defendants argue that the Complaint fails to state a claim for deliberate indifference to a serious medical need. The Defendants do not dispute Mr. Adams's serious medical need. Instead, they assert in conclusory fashion that the failure to timely remove a metal plate from Plaintiff's mouth, a "delay" in eye care, and other

4

failures to follow up from outside medical professionals "do not rise independently to the level of deliberate indifference." Defendants suggest that complications caused by the failure to timely remove a temporary plate, and the other failures to follow up with needed care, were nothing more than negligence. (ECF 11 at 4, 6).

To establish an Eighth Amendment violation, a prisoner—or former prisoner—must satisfy both an objective and subjective inquiry related to a prison official's conduct. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The Eleventh Circuit has held that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Conduct is "more than mere negligence" when an official "'knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (quoting *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1425 (11th Cir. 1997)). An official "act[s] with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours," for a sufficiently serious condition. *Id*. See *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995) (Delays causing unnecessary and wanton infliction of pain may constitute deliberate indifference.).

Indeed, even where some care is provided, prison officials are deliberately indifferent if they are "aware of the [serious] medical condition and the need for effective treatment and then callously or recklessly disregard it." *McAdams v. Pelt*, No. 5:15-cv-312, 2018 WL 5850945, at *2 (N.D. Fla. Apr. 27, 2018) (citing *McElligott*,

182 F.3d at 1257–58). It is well-established that "[t]he mere fact that medical care is eventually provided is insufficient to defeat a claim for deliberate indifference" because "[a]n official may still act with deliberate indifference 'by delaying the treatment of serious medical needs.'" *Ireland v. Prummell,* 53 F.4th 1274, 1287–88 (11th Cir. 2022) (quoting *McElligott*, 182 F.3d at 1255). It is enough to establish deliberate indifference to show that whatever medical care was given was insufficient given the serious medical need. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *Webster*, 2023 WL 113602, at *8 (delay in providing treatment must cause harm to satisfy Eighth Amendment), citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). For a delay to constitute deliberate indifference, it must "seriously exacerbate the medical problem … [and be] medically unjustified." *Sims v. Figueroa*, No. 21-10647, 2022 WL 188485, at *5 (11th Cir. Jan. 21, 2022), cert. denied, 213 L. Ed. 2d 1102, 142 S. Ct. 2888 (2022) (quoting *Taylor*, 221 F.3d at 1260) (alterations in original). Defendants cannot escape constitutional liability by claiming they were doing the bare minimum for Mr. Adams. Whether they satisfied the Eighth Amendment is a factual inquiry into whether the delays here exacerbated Mr. Adams's condition and were "medically unjustified." *Taylor*, 221 F.3d at 1260.

Clinicians can make judgment calls—even negligent ones, sometimes[3] — without violating the Constitution. But that is not what happened here. This is not a

---

[3] Some courts have held that medical negligence may rise to the level of a constitutional violation where the negligence involves culpable recklessness. See, e.g., Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

matter of whether there was a "genuine, good-faith disagreement between healthcare professionals" concerning the tolerability and responsiveness of Mr. Adams's treatment. *Smith v. Ward*, 848 F. App'x 853, 857– 58 (11th Cir. 2021) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991)). Mr. Adams does not complain of missed diagnosis or even assert that Defendants plotted a less efficacious alternative course of treatment. Instead, he claims that Defendants knew that he had ongoing treatment needs, but deliberately delayed or denied follow-up despite objectively knowing of the need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[w]hether a prison official had the requisite [subjective] knowledge of a substantial risk is a question of fact subject to demonstration . . . from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

While the defendants placed Mr. Adams in a prison infirmary for a time and had an initial eye care assessment done, their failure to follow up with actual treatment resulted in a sustained period of pain and incapacity and ultimately a substantial loss of vision. *Smith*, 848 F. App'x at 858 (explaining that in some cases mere monitoring cannot avoid imminent danger of serious injury); *McElligott*, 182 F.3d at 1257 (treatment or medication can be "so cursory as to amount to no care at all"). Instead, where Mr. Adams has alleged that the Defendants' knowing denial of care for the remainder of his time in prison, he has stated a plausible claim as to their deliberate indifference. *Estrada v. Stewart*, 703 F. App'x 755, 760 (11th Cir. 2017) (quoting *McElligott*, 182 F.3d at 1257–58). Mr. Adams adequately alleges Defendants

7

were sufficiently aware of his serious medical needs to establish Eighth Amendment liability. As to his horrific wounds, see Complaint ¶¶ 42-47. The well-pleaded allegations in the Complaint support that the perfunctory care for Mr. Adams's medical needs once he was returned to prison were "so cursory as to amount to no care at all." *McElligott*, 182 F.3d at 1257. The claims are essentially that the treatment provided for Mr. Adams' amounted to no treatment. Those are viable claims under the Eighth Amendment. *Poag*, 61 F.3d at 1543 ("[K]nowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference."); *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

### B. Plaintiff Has Pled a Link Between His Injuries and Defendants' Policies

Defendants also argue that Mr. Adams has not pleaded causation for his deliberate indifference claims. To state a claim for deliberate indifference under § 1983, Mr. Adams must allege a causal connection between the constitutional violation and the state actor's conduct. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted) (requiring "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"). Mr. Adams may prove that causal link "by showing that the state actor was personally involved in the acts that resulted in the violation of the constitutional right." *Martinez v. Burns*, 459 F. App'x 849, 851 (11th Cir. 2012).

Here, Defendants don't deny knowing about Mr. Adams's need for timely follow-up care. Their apparent disagreement on whether that is negligence or

deliberate indifference does not affect causation. Mr. Adams has adequately pleaded subjective knowledge. He has also pleaded that the delay seriously exacerbated his medical condition sufficient to support causation. (See *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007)). Defendants seem to rest on the fact that Plaintiff received "extensive medical treatment" at two separate hospitals. (ECF 11 at 2). It is true that Plaintiff received severe life-threatening injuries while in prison and received substantial medical care outside the prison system. Problems began when he returned to the prison system and to his dependence on Defendants' care.

The Complaint satisfies the requirements to state a claim against Centurion and MHM Health for *Monell* relief. "A municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional injury." *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020); see also *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (government entity itself must cause the constitutional violation).[4]

---

[4] Centurion takes on the position of a municipality for the purpose of liability here, because "[w]hen a private entity . . . contracts with a [municipality] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and 'becomes the functional equivalent of the municipality' under section 1983." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Centurion "subcontracts with […] MHM [Health] to provide medical staffing" to Florida prisons. *Blain v. Centurion of Fla., L.L.C.*, No. 8:20-CV-49-T-24 SPF, 2020 WL 821457, at *1 (M.D. Fla. Feb. 19, 2020). Centurion and MHM Health assert that they are confused because Mr. Adams' *Monell* claims do not specifically identify which specific policy or custom pertains to which defendant. Mr. Adams need not determine without discovery at this stage whether the policy of delayed treatment, etc., is attributable to only Centurion, MHM Health, or both—for now his claim meets the pleading requirements by providing these defendants "sufficient clarity to frame" a response. *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n. 8 (11th Cir. 2001); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015) (trial court abused its discretion dismissing counts that were "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted").

To state a *Monell* claim, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). *Monell* liability can also be established based on a failure to adequately train employees where such a failure, "evidences a deliberate indifference to the rights of its inhabitants [that] can be properly thought of as a . . . policy or custom" *City of Canton v. Harris*, 489 U.S. 378, 389, (1989). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct." *Griffin v. City of OpaLocka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Further, municipal "liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002); see also *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (a policy can be adopted by the entity or created by an official of such rank that "he or she could be said to be acting on behalf of the [entity]").

Mr. Adams has sufficiently pleaded factual allegations supporting his *Monell* claims. The Supreme Court and the Eleventh Circuit have made clear that there is no

heightened pleading standard under Rule 8(a)(2) for *Monell* claims. See *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("[A] federal court may not apply a standard 'more stringent than the usual pleading requirements of Rule 8(a)' in 'civil rights cases alleging municipal liability[.]'") (citation omitted); *Hoefling v. City of Miami*, 811 F.3d 1271, 1275-76 (11th Cir. 2016) (finding no heightened pleading standard for a *Monell* claim); *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("After *Ashcroft v. Iqbal*, which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, there is no longer a heightened pleading standard in cases governed by Rule 8(a)(2), including civil rights [cases] under § 1983[.]") (quotations omitted)); *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.").

Plaintiff's Complaint satisfies this pleading standard by alleging *Monell* liability against Centurion and MHM Health. Mr. Adams alleges that under Centurion and MHM Health's management of healthcare delivery within FDC, the following widespread policies exist by which prisoners receive unconstitutionally inadequate healthcare: (a) refusal to provide adequate treatment to patients; (c) refusal to follow discharge instructions for follow-up care; (d) failure to create sensible treatment plans for patients whose health status requires the same; (e) failure to ensure continuity of care; (f) prioritization of profits at the expense of constitutionally adequate care; (g) failure or refusal to arrange for prisoners to receive timely treatment as they approached the end of their sentence. (ECF 1 at ¶¶ 101-06).

11

In response, Centurion and MHM Health argue that Mr. Adams has not, among other things, pleaded sufficient allegations that Centurion and MHM Health had a policy of delaying or not providing treatment to prioritize profits. (ECF 11 at 4-7). They assert that Mr. Adams's allegations are conclusory and fail to explain how such considerations amount to deliberate indifference. In *Scayles v. Inch*, No. 3:19-CV- 1311-MMH-PDB, 2022 WL 35991 (M.D. Fla. Jan. 4, 2022), this Court found that the plaintiff had only rendered legal conclusions as to Centurion's policy to delay diagnosis and treatment for patients with cardiac issues to save money. 2022 WL 35991, at *9. Here, however, Mr. Adams does assert facts sufficient under *Hoffer* to state a claim for a policy of delayed and denied treatment.[5]

Centurion and MHM Health argue that Mr. Adams has failed to allege facts showing their policies or customs "led to the violation." (ECF 11 at 5) They suggest Mr. Adams has not stated a claim on this basis. As shown above, Mr. Adams has identified policies and demonstrated that they were the moving force behind the violations—Centurion and MHM Health did not violate established protocol; the protocol was to delay or deny treatment to save money, among other things.

---

[5] Courts have found allegations that the medical provider was withholding treatment for monetary concerns was sufficient to overcome a motion to dismiss. *Hayes v. Corizon Health, Inc.*, No. 4:19CV97/MW/EMT, 2020 WL 6219833, at *8 (N.D. Fla. Sept. 22, 2020), report and recommendation adopted, No. 4:19CV97-MW/EMT, 2020 WL 6206012 (N.D. Fla. Oct. 22, 2020) (finding allegation that plaintiff "did not receive necessary treatment sooner due to Centurion's custom and/or policy of cost containment" was sufficient to overcome a motion to dismiss"); *Carmichael v. Jones*, No. 4:16CV238-RH/CAS, 2017 WL 2637410, at *9 (N.D. Fla. Apr. 12, 2017), report and recommendation adopted, No. 4:16CV238-RH/CAS, 2017 WL 2636492 (N.D. Fla. June 17, 2017) (rejecting argument that allegation Corizon "promulgated a policy or custom to refuse to disclose the criteria for necessary surgery ... and to deny treatment based on prisoner age, and on the basis of cost-savings" was speculative and conclusory).

### C. Plaintiff Has Pled a Distinction Between Centurion and MHM

Centurion of Florida, LLC, is described in Plaintiff's Complaint as a foreign limited liability company, a subsidiary of Centene Corporation, principally located in the State of Missouri, that has contracted with the State of Florida to provide medical care to prisoners. (ECF 1 at ¶ 8). MHM Health Professionals, LLC, is a subsidiary of MHM Services, Inc., which is a wholly-owned subsidiary of Centene Corporation, and is responsible for the provision of staffing services related to the contract with FDC managed by Centurion. (Id. at ¶ 9). Centurion and MHM work hand-in-glove but each is a separate suable entity which has its own basis of liability for the wrongful acts complained of in this case. Plaintiff could, if need be, add additional information to distinguish the two entities.

### CONCLUSION

For all the reasons above, the Court should deny Centurion and MHM's motions to dismiss (ECF 11). If the Court should find the Complaint deficient, Plaintiff submits that amendment would not be futile or made for purposes of delay.

Respectfully submitted,   *s/ James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Phone: (850) 222-8080
Fax: (850) 561-0836
Email: cookjv@gmail.com

*s/ Chris Poulos*
CHRIS POULOS, ESQ.
Florida bar Number 109745

13

>Poulos Law Firm
>11108 Wildlife Trail
>Tallahassee, FL 32312
>Phone: (850) 933-0775
>Primary Email:
>chris@chrispouloslaw.com
>Secondary Email:
>chris.poulos.9531@gmail.com
>Counsel for Plaintiff

I CERTIFY that a true copy hereof was filed using the CM/ECF system, which will serve a copy on all counsel of record, on May 25, 2023.

>By: */s/ James Cook*