UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN ADAMS,

    Plaintiff,

vs.

CAPT. JOSEPH I. SCHROCK and SGT. MICHAEL C. TONA, SGT. CODY L. SAINT, OFCR. BENJAMIN E. LEWIS, OFCR. (fnu) WEEKS, OFCR. (fnu) HUGHES, individually, CENTURION OF FLORIDA, LLC, MHM HEALTH PROFESSIONALS, LLC,

    Defendants.

Case No. 3:23-cv-3882-MCR-HTC

## AMENDED COMPLAINT FOR DAMAGES

PLAINTIFF sues DEFENDANTS, and alleges:

### Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343.

2. Plaintiff's federal claims are predicated upon 42 U.S.C. §§ 1983 and 1988.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

4. All conditions precedent to this action have been performed or waived.

### Parties

5. At all times material hereto, STEVEN ADAMS ("Plaintiff") was an Inmate in the care and custody of the Florida Department of Corrections ("FDC") but has since been released from custody at the end of his sentence.

1

6. At all times material hereto, JOSEPH I. SCHROCK was a Captain at Santa Rosa Correctional Institution ("Santa Rosa CI") and is sued individually.

7. At all times material hereto, SGT. MICHAEL C. TONA was a Sergeant at Santa Rosa CI and is sued individually.

8. At all times material hereto, SGT. CODY L. SAINT was a Sergeant at Santa Rosa CI and is sued individually.

9. At all times material hereto, OFCR. BENJAMIN E. LEWIS was a Corrections Officer at Santa Rosa CI and is sued individually.

10. At all times material hereto, OFCR. (fnu) WEEKS was a Corrections Officer at Santa Rosa CI and is sued individually.

11. At all times material hereto, OFCR. (fnu) HUGHES was a Corrections Officer at Santa Rosa CI and is sued individually.,

12. Defendant Centurion of Florida, LLC is a subsidiary of Centene Corporation, principally located in Missouri and registered as a foreign limited liability company with the State of Florida. Since 2016, Centurion has contracted with FDC to provide medical care to prisoners.

13. Defendant MHM Health Professionals, LLC is a wholly owned subsidiary of MHM Services, Inc., which itself is a wholly owned subsidiary of Centene Corporation. MHM Health is responsible for the provision of staffing services related to Centurion's contract with FDC.

## Common Allegations of Fact

14. On May 16, 2021, Plaintiff Adams was a prisoner at Santa Rosa Annex.

15. Plaintiff was due to be released on March 18, 2022, on a two-year sentence.

16. Despite the fact that he had a short sentence, Plaintiff was sent to Santa Rosa Correctional Institution, a level VII psychiatric prison although Plaintiff had no psychiatric problems and was not a gang member.

17. Plaintiff worked as a Staff Canteen Orderly.

18. On May 8, 2021, at 7:30 a.m., a cook in the kitchen made Plaintiff a sandwich and gave it to him. Plaintiff filled his cooler with ice in the kitchen as usual and placed the sandwich in his cooler.

19. Plaintiff was stopped on his way back to the Staff Canteen by guards.

20. Plaintiff was asked what was in the cooler and truthfully responded that it was a sandwich but was accused of lying by the guards.

21. Plaintiff was placed in confinement in K1106 with cellmate Andrea Banks, DC#W45007, a psychiatric patient who was awaiting transfer.

22. Banks had been placed in the cell on May 5, 2021. Banks was known to officers to be a Psychiatric Patient and a Disciplinary Confinement Inmate.

23. Plaintiff was an Administrative Confinement Inmate awaiting a hearing.

24. Plaintiff quickly realized Banks had serious mental health problems.

25. From May 8, 2021, through May 16, 2021, Plaintiff listened to Banks scream and watched him overflow the toilet, play with his feces, and talk to people

3

who were not there.

26. On May 11, 2021, Plaintiff asked officers to be moved because he was in fear for his safety.

27. Plaintiff observed Officers antagonizing Banks and telling him "we're letting the white boy shower" while refusing to let Banks shower.

28. Plaintiff was provided food to eat by officers but Plaintiff observed officers barely feeding Banks.

29. Plaintiff observed prison staff sticking their hands in Bank's food and drink to antagonize Banks and make him envious of Plaintiff's treatment.

30. Plaintiff was concerned that the officers were trying to incite Banks to harm him and begged to be moved to another cell but was denied each time.

31. Every time Plaintiff left his cell to shower, he pleaded not to be placed back in the cell with Banks who was becoming more erratic day by day.

32. Plaintiff tried to get the names of the officers who incited Banks and refused to move him but many of the officers routinely wore no name tags.

33. Some officers told Plaintiff that they told Housing Sgt. Michael Tona, about Plaintiff's request to be moved to another cell but that Sgt. Tona said no.

34. Housing Sgt. Cody Saint was also informed of the danger to Plaintiff but he consistently refused to move Plaintiff or intercede to protect him.

35. Officer Benjamin Lewis allowed the inmates serving the food to Banks to put their fingers in his drinks and deprive Banks of food.

36. It appeared to Plaintiff that Sgt. Tona and Saint and some corrections officers wished him harm at the hands of the increasingly erratic Andrea Banks.

37. From May 11, through May 16, 2021, Plaintiff observed Banks screaming and flooding the cell by ripping his sheets and flushing them in the toilet.

38. At each shift change for officers, Plaintiff begged officers for help because he was being regularly threatened with harm by his cell mate Banks.

39. Each time his request for help and to be moved was refused. The officers said Sgt. Tona told them to tell Plaintiff to fight with Banks and make up.

40. Officer Weeks told Adams, "You two are just going to have to fight and get it over with so you can live together."

41. Officer Hughes told Plaintiff that if he tried to resist being celled with Banks that Hughes would spray him with chemicals and place him in "strip cell."

42. "Strip cell" means being placed in a cell with just boxers and no mattress or pillow or bedding, just concrete or cold steel to sleep on.

43. On May 16, 2021, Banks told officers making rounds that he was having homicidal thoughts and claimed a psychiatric emergency.

44. Banks told officers he'd hurt himself or his cell mate if he didn't get help.

45. Capt. Joseph Schrock came to the cell of Plaintiff and Banks and he saw Plaintiff with his property packed, and asked Plaintiff "What is that?"

46. Plaintiff told Capt. Schrock that he assumed he was going to be moved and explained that his cell mate was mentally ill and had threatened to kill him.

47. Schrock just laughed and said, "This is prison; that's not how this works" and walked away. Schrock didn't address Banks' psychological emergency and instead left Plaintiff in the cell with Banks.

48. Plaintiff tried to remain vigilant but eventually he fell asleep.

49. On May 16, 2021, Banks attacked Plaintiff while Plaintiff slept in his bunk in the Santa Rosa C.I. Annex, K-Dorm, Wing 1, around 5:00 p.m.

50. Plaintiff woke up in Sacred Heart Hospital, Pensacola.

51. Banks had tried to kill Plaintiff while Plaintiff slept.

52. One medical provider gave emergency care to Plaintiff while being assisted by an officer who found Plaintiff unconscious and who reported he held Plaintiff's face together because it was damaged so badly by Banks.

53. Plaintiff's eyes were black and blue and completely shut.

54. After the attack by Banks, Plaintiff was taken to Sacred Heart Hospital, Pensacola and given a pain killer before being taken to a Memorial Hospital, Jacksonville where surgeries were performed except those to his left eye.

55. Medical staff noted the whole upper part of Plaintiff's nose was broken away.

56. Plaintiff's palate was broken and medical staff could look through the hole where the bridge of his nose had been and see the top of his tongue.

57. Plaintiff's nose was broken so badly a surgeon said it was one of the worst cases he had ever seen and asked what Banks had used to hit Plaintiff.

58. Banks told investigators he hit Plaintiff with his hands. However, investigators

noted Banks' hands showed no marks or signs of effects of such powerful blows to the face of Plaintiff.

59. One prison medical provider said Plaintiff must have been hit with a lock.

60. Use of a "lock in a sock" is known to be a standard prison weapon.

61. Officers are not supposed to permit locks in a confinement cell.

62. After the attack by Banks, Capt. James N. Beem, Jr. and Sgt. Dakota B. Neely searched the cell and found a heavy Master Key combination lock.

63. Plaintiffs' left eye socket was broken. His left pupil was so badly injured his distance vision was 20/800 and his near vision is 20/200 which makes him legally blind with only 30 to 50% visibility in his left eye.

64. On May 25, 2021, Plaintiff had surgery on his LeFort III fracture with Dr. Anthony Massaro, DMD, and Dr. Andrew Skigen, DMD as surgeons.

65. It was noted that Plaintiff had been beaten with a hard metal object.

66. Plaintiff's ribs were also fractured on the left side.

67. Plaintiff had an open reduction and internal fixation of the LeFort III fracture, left zygomaticomaxillary complex fracture, and complex nasal bone fracture.

68. On May 27, 2021, surgeons cleared Plaintiff for discharge with the proviso that Plaintiff was to follow up with his surgeon Dr. Massaro in a week.

69. On May 28, 2021, Plaintiff was sent to Hamilton Correctional Institution.

70. On June 4, 2021, Plaintiff was due for his one-week follow-up with his surgeon, Dr. Massara. However, he was not taken to see Dr. Massara.

71. A new request for follow-up was sent to Centurion's Utilization Management (UM) on June 8, 2021, however the medical records show no UM response.

72. In fact, Plaintiff was never taken for follow-up with his surgeon at all.

73. Plaintiff was never taken for follow-up with his ophthalmologist either.

74. On July 12, 2021, he was taken for a consultation with an optometrist instead.

75. On January 14, 2022, a Consultation Request was made for Plaintiff's vision problems. The request noted that the "left eye slow to react with pupil larger than right. Little to no reaction to light. Patient reports right eye floaters."

76. The consultation request was marked urgent.

77. Plaintiff never saw an ophthalmologist at any time after his surgery at Memorial Hospital in Jacksonville in May of 2021.

78. After his time at Hamilton CI, Plaintiff was returned to Santa Rosa CI and placed in custody of the same officers who allowed the permanent serious injuries of Plaintiff committed by Banks to happen.

79. Some prison staff told Plaintiff they were sorry about what Banks did to Plaintiff but warned him he would be put back in confinement if he wrote to a lawyer because that's what they do when you write to an attorney.

80. Plaintiff was able to send photographs of his face home through his tablet before prison officials caught on and began blocking his emails.

81. Plaintiff had extreme difficulty getting Santa Rosa CI medical staff to have his serious injuries cared for by prison medical providers.

82. Plaintiff was supposed to be sent to the Reception and Medical Center (RMC) to get a metal plate out of his mouth, but this procedure was delayed by prison medical providers and the plate was left in about eight weeks too long.

83. The July 12, 2021, vision assessment was supposed to be followed up in three months, which would have been October 2021. It never happened.

84. Prison medical providers performed an eye chart test on Plaintiff in February 2022, and stated they were ordering him glasses.

85. Plaintiff received glasses about 5 days before his release in March 2022.

86. No further medical care was provided to Plaintiff before his March 2022, release despite incompletely treated eye injuries and other permanent injuries.

87. Plaintiff has scars from the tip of his nose and extending over both eyebrows.

88. Plaintiff cannot now see out of his left eye.

89. Plaintiff will no longer be able to continue his career as a mason.

90. After the attack, he experienced severe anxiety, depression, and nightmares.

91. Following his March 2022, release, Plaintiff continues to experience severe anxiety, depression, and nightmares.

92. A Mental Health doctor at Santa Rosa CI diagnosed Plaintiff with PTSD.

93. During surgery for the face and mouth injuries, Plaintiffs' upper lip was stitched to his upper gum which prevents him from moving his upper lip.

94. Stitches from the mouth surgery must still be in his mouth because he can feel them when runs his tongue along his gum.

95. Plaintiff continues to suffer back pain related to the attack.

96. Plaintiff was not provided adequate dental care following his severe injuries in FDC custody and will need substantial dental care following his release.

97. Plaintiff has pain in the right upper part of his mouth. An x-ray showed part of a tooth broken in the assault was missing all the way down to the nerve.

98. Plaintiff will need facial reconstruction surgeries and multiple eye procedures following his release which may be less efficacious because these necessary procedures were not performed while he was still in FDC custody.

99. As a result of the permanent severe eye injuries caused by the Banks attack and the lack of necessary medical care while still in FDC custody, Plaintiff is legally blind in his left eye and is unable to work as a brick mason, his former profession for over 23 years before his incarceration.

## Causes of Action

**I.  Eighth Amendment: Cruel and Unusual Punishment: Failure to Protect as to Schrock, Tona, Saint, Lewis, Weeks and Hughes (42 U.S.C. § 1983)**

The Common Allegations of Fact above are stated herein by reference.

100. Plaintiff is entitled to relief against Defendants Schrock, Tona, Saint, Lewis, Weeks and Hughes for failure to protect Plaintiff in violation of his rights under the Eighth Amendment, "cruel and unusual punishment."

101. Schrock, Tona, and Lewis refused to move Plaintiff.

102. Weeks allowed orderlies to torment Banks and starve him or contaminate his food knowing he would blame his cell mate for the unequal treatment.

103. Hughes threatened to punish Plaintiff with chemical agents and strip cell if he complained of or resisted his treatment and endangerment.

104. Defendants, acting under color of law, exposed Plaintiff to danger from Banks, inciting Banks against him by abuse and unequal treatment, and made no effort made to move him away from the known risk of harm.

105. None of the Defendants sought to intervene to try to prevent the abuse, though it happened in their presence and they could have intervened.

106. Defendants showed deliberate indifference to Plaintiff's safety by telling him to simply fight Banks and make up with him and by not moving him to another call despite their knowledge that Banks was a psychiatric patient and had told officers he was having homicidal thoughts prior to the violent attack on Plaintiff by Banks on May 16, 2021, while Plaintiff slept.

107. Defendants were deliberately indifferent to the substantial risks to the Plaintiff by failing to heed warnings, come to the aid of the Plaintiff, or remove him to another cell to preserve his life and safety.

108. As a proximate result of Defendants' denial of protection, Plaintiff has suffered significant permanent severe physical injury, mental distress, humiliation, and immense pain and suffering, and will continue to suffer from such injuries in the future.

109. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

II. **Eighth Amendment: Cruel and Unusual Punishment: Supervisory Liability as to Schrock, Tona, and Lewis (42 U.S.C. § 1983)**

The Common Allegations of Fact above are stated herein by reference.

110. Plaintiff is entitled to relief against Defendants Schrock, Tona, and Lewis acting under color of law, for deliberate indifference to a known risk of harm.

111. As supervisors on the scene who observed or Plaintiff informed of the abuse and the endangerment, they are liable for Plaintiff's severe injuries.

112. Defendants failed to adequately advise and supervise their subordinates regarding their misconduct performed in their correctional duties.

113. Defendants permitted Banks, a known psychiatric patient, to remain in the same confinement cell with Plaintiff despite Banks having expressed homicidal thoughts openly and repeatedly to prison officials and despite their knowledge of Banks' threats to the life and safety of Plaintiff.

114. Defendants had the ability to intervene to stop the unlawful conduct of their subordinates and Banks but willfully choose not to do so.

115. Defendants knew their conduct would cause subordinate officers to either act unlawfully, or continue to act unlawfully, but failed to intervene.

116. Actions by Defendants were a direct and proximate cause of significant permanent severe physical injury, mental distress, humiliation, and immense pain and suffering, that Plaintiff will continue to suffer from in the future.

117. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

**III.  Eighth Amendment: Cruel and Unusual Punishment: Failure to Treat pursuant to 42 U.S.C. § 1983 (Centurion and MHM)**

The Common Allegations of Fact above are stated herein by reference.

118. Defendant Centurion managed the contract with FDC. Defendant MHM staffed the professional positions in the medical departments.

119. Defendants Centurion and MHM breached their duty to Plaintiff by failing to provide timely necessary medical follow-up despite knowledge of the need for such care while Plaintiff was still in the custody of FDC.

120. Because of the failure of the medical providers to maintain a schedule of follow-up care, Plaintiff suffered constant pain and lost substantial vision.

121. Because of the Defendants' delay and denial of timely medical care, Plaintiff has had serious ongoing pain and dysfunction in his jaw and eyes.

122. As a direct and proximate result of the FDC breach of its duty to Plaintiff, he suffers more severe disfigurement than if he had been timely treated.

123. Florida prison medical providers Centurion and MHM follow a pattern and practice of failing to provide timely adequate follow-up care to avoid costs.

124. Florida prison medical providers Centurion and MHM follow a pattern and practice of denying needed care to prisoners who are nearing release.

125. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Compensatory damages against all defendants;

B. Punitive damages against individual defendants;

C. Reasonable attorney's fees and costs as provided by law;

D. Trial by jury for those counts so triable; and

E. Such other relief as the Court deems just and proper.

Respectfully submitted,   *s/ James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Phone: (850) 222-8080
Fax: (850) 561-0836
Email: cookjv@gmail.com

*s/ Chris Poulos*
CHRIS POULOS, ESQ.
Florida bar Number 109745
Poulos Law Firm
11108 Wildlife Trail
Tallahassee, FL 32312
Phone: (850) 933-0775
Primary Email:
chris@chrispouloslaw.com
Secondary Email:
chris.poulos.9531@gmail.com
Counsel for Plaintiff

I CERTIFY the foregoing was filed electronically on 6/1/2023, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

/s/James V. Cook