**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

STEVEN ADAMS,

     Plaintiff,

vs.

CAPT. JOSEPH I. SCHROCK, et al.,

     Defendants.

Case No. 3:23-cv-3882-MCR-HTC

**PLAINTIFF'S UNOPPOSED RESPONSE TO CENTURION'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF 40)**
**AND MOTION FOR LEAVE TO FILE OUT OF TIME**

Plaintiff Steven Adams, through counsel, responds to the Rule 12(b)(6)

Motion to Dismiss Plaintiff's Second Amended Complaint (SAC) (ECF 40) by

Defendants Centurion and MHM,[1] and would show as follows:

1. Defendants move to dismiss the complaint on the following grounds:

   a. Purported delays in care do not rise to deliberate indifference;

   b. Plaintiff received "extensive medical treatment" at two hospitals;

   c. The need for care was recognized and coordinated;

   d. Plaintiff does not claim he did not get care in his prison placements;

   e. There is no link between failures of care and Centurion's practices;

   f. Plaintiff does not distinguish between roles of Centurion and MHM;

   g. This is Plaintiff's "third bite at the apple."

---

[1] Counsel for Centurion and MHM has acknowledged that he will be representing the individual medical defendants, Nobles, Wexler, Amatucci, Sealy, and Wilcoxson. He was served waivers of service on November 8, 2023, which will be due, if accepted, on December 8, 2023.

2.    Plaintiff will respond below as follows:

    a.   Delay and denial of care constituted deliberate indifference;

    b.   Plaintiff's "extensive medical treatment" as to the fractures did not equate to adequate care as to the ophthalmologic, dental, and other needs;

    c.   Plaintiff agrees that the need for care was recognized and coordinated but Movants coordinated the care so as to truncate and minimize it;

    d.   Plaintiff *does* plead that he did not get necessary care in prison placements;

    e.   Plaintiff has pled a link between failures to treat and Movants' policies;

    f.   Plaintiff has adequately pled a distinction between Centurion and MHM;

    g.   There is no procedural rule disfavoring "third bites at the apple."

### INTRODUCTION

Movants offer a highly-colored account of Plaintiff's Second Amended Complaint in which they ignore or minimize large parts of Plaintiff's allegations. Plaintiff submits that the best source of facts alleged in the Second Amended Complaint is the Complaint itself. However, Plaintiff summarizes the salient facts:

On May 16, 2021, Plaintiff was attacked by his cellmate while he slept. (ECF 38 at ¶¶ 53-57). The cellmate, Andrea Banks, used a metal lock to smash Plaintiff's face, breaking the bridge of his nose completely off his face. Adams was found unconscious and rushed to Sacred Heart Hospital in Pensacola, and later to Memorial Hospital in Jacksonville, Florida. Multiple surgeries were performed except for a surgery to his damaged left eye, which had to be deferred until after the facial fractures were treated, and some dental repair. Responders to the attack could look through the hole where Adams' nose had been and see the top of his tongue. (Id. at ¶¶ 65-67). After going through surgery to repair the facial fractures, Plaintiff

was returned to the Florida prison system where he was allowed to languish with incomplete surgical follow-up care as deadlines were ignored. (Id. at ¶¶ 79-81, 84-86). Essentially, Movants entrusted Adams to the care of the surgeons at Memorial Hospital then ignored their orders on discharge, resulting in incomplete or complete lack of restoration of some injuries. An examination for Plaintiff's unfinished eye care was done on July 12, 2021, and a follow-up was scheduled for five months later in October. But no exam was done in October and as the months passed, Plaintiff was told he was getting too close to his release date in March to get further care. The follow-up never took place. (Id. at ¶¶ 86-90, 96-99). Plaintiff, no longer a prisoner, has been diagnosed with PTSD, he is legally blind in his left eye and has blurred vision in his right, and his face is permanently disfigured. (Id. at ¶¶ 100-106, 113).

Plaintiff still has severe dental damage, including broken teeth below the gum. He still needs surgical reconstruction which now becomes more difficult and less efficacious because of delay. (Id. at ¶¶ 110-12). Movants failed to provide Plaintiff with timely necessary care while he was still in the custody of FDC. He has lost substantial vision because of the failure to provide follow-up care.[2] He has serious ongoing pain and dysfunction. Movants have a pattern of delay and denial of care to avoid costs, especially as inmates approach their release date. (Id. at ¶¶ 138-39).

---

[2] Defendants characterize this failure to follow-up with needed eye care for nearly a year as "a missed appointment for eye care" and speak of his need for dental care as if unrelated to the need for facial reconstruction from the assault. (ECF 40 at 8-9). Actually, optometric care, which does not address the eye trauma, was substituted for needed and diagnosed ophthalmologic care. Plaintiff is now legally blind in his left eye and can no longer follow his profession as a brick mason. (ECF 38, ¶¶ 102-03). Plaintiff has broken teeth, at least one all the way down to the nerve. (Id., ¶¶ 110-11).

## MEMORANDUM OF LAW

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015) (quotation omitted), which can allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). This threshold "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

The Eleventh Circuit thus applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This approach applies to all Rule 8(a) pleadings—no heightened pleading standard exists for civil right or municipal liability claims. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

## A. Plaintiff's Allegations Rise to the Level of Deliberate Indifference

Plaintiff's Complaint meets the liberally-construed standards to state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment. See *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Plaintiff's alleged facts are also sufficient to establish municipal liability for these constitutional violations under *Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 662 (1978). Mr. Adams has alleged facts showing that Centurion and MHM customs and practices of inadequate care, its failure to adequately provide needed medical care, directly caused violations of Adams' constitutional rights. He has therefore adequately alleged municipal liability for denial of constitutionally required medical care.

Movants argue that the Complaint fails to state a claim for deliberate indifference to a serious medical need. The Movants do not dispute Mr. Adams's serious medical need. Instead, they assert in conclusory fashion that the failure to timely remove a metal plate from Plaintiff's mouth, a complete failure to address the ophthalmologic injuries to the left eye, and other failures to follow up as ordered by outside medical professionals "do not rise independently to the level of deliberate indifference." Movants suggest that complications caused by the failure to timely follow up with needed care, were no more than medical negligence. (ECF 40 at 6).

To establish an Eighth Amendment violation, a prisoner—or former prisoner—must satisfy both an objective and subjective inquiry related to a prison official's conduct. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The Eleventh Circuit has held that "deliberate indifference has three components: (1)

subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Conduct is "more than mere negligence" when an official "'knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (quoting *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1425 (11th Cir. 1997)). An official "act[s] with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours," for a sufficiently serious condition. *Id*. See *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995) (Delays causing unnecessary and wanton infliction of pain may constitute deliberate indifference.).

### B. Even Where Care Is Given, Care May Still Be Inadequate to the Need

Movants emphasize that Plaintiff received "extensive care," and so he did. LeFort fractures of fragile facial bones are horrific injuries. Of the three types of LeFort injuries, I, II, and III, Plaintiff received all three. Indeed, even where some care is provided, prison officials are deliberately indifferent if they are "aware of the [serious] medical condition and the need for effective treatment and then callously or recklessly disregard it." *McAdams v. Pelt*, No. 5:15-cv-312, 2018 WL 5850945, at *2 (N.D. Fla. Apr. 27, 2018) (citing *McElligott v. Foley*, 182 F.3d 1248, 1257–58 (11th Cir. 1999). It is well-established that "[t]he mere fact that medical care is eventually provided is insufficient to defeat a claim for deliberate indifference" because officials may still act with deliberate indifference "by delaying the treatment of serious medical needs." *Id.* at 1255. It is enough to establish deliberate indifference to show

that whatever medical care was given was insufficient given the serious medical need. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *Webster v. Corizon*, 2023 WL 113602, at *8 (M.D. Fla.) (delay in providing treatment must cause harm to satisfy Eighth Amendment), citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). For delay to constitute deliberate indifference, it must "seriously exacerbate the medical problem" and be medically unjustified." *Sims v. Figueroa*, No. 21-10647, 2022 WL 188485, at *5 (11th Cir. Jan. 21, 2022), cert. denied, 213 L. Ed. 2d 1102, 142 S. Ct. 2888 (2022) (quoting *Taylor*, 221 F.3d at 1260) (alterations in original). Movants cannot escape constitutional liability by doing the bare minimum for Adams. What is needed is a factual inquiry into whether the delays here exacerbated Mr. Adams's condition and were "medically unjustified." *Id.*

Movants claim that Adams never alleges a need to see an ophthalmologist. (ECF 40 at 5). However, Adams pleads that "Plaintiff received a preliminary examination where a motility deficit was noted in the left eye and oculoplastic intervention suggested. He was noted to have enophthalmos (eyes sunken back) and hypoglobus (downward placement of the eyes) due to trauma, affecting eye movement. (ECF 38, ¶¶ 59-60). Plaintiff pleads that "glasses did not address the defects caused by eye trauma which would have required ophthalmologic care, not an optometrist." (Id., ¶ 99). Also, "Kelly Wexler, as a Utilization Management reviewer for Defendant Centurion noted Plaintiff's blurry vision in the need for an ophthalmology consult. However no ophthalmology treatment was ever obtained either during the Memorial Hospital stay or afterwards." (Id., ¶ 147). Also, "Plaintiff

7

saw an ophthalmologist twice briefly prior to fracture repair surgery." (Id., ¶ 149).

"The interference with Dr. Massaro's postop visit resulted in a failure to fully remove

the sutures and the failure to move on to ophthalmologic care. Essentially, medical

intervention was stopped prematurely at that point. On or about January 14, 2022,

APRN Troy Wilcoxson ordered a referral – not for ophthalmology, but for

optometry, a less expensive discipline but one that did not and could not address

Plaintiff's eye trauma and dysfunction." (Id., ¶¶ 153-54).

Movants also state that Adams "also alleges, with *little specificity*, that he was

not provided adequate dental care following his injuries in FDC custody and will

need substantial dental care following his release. (ECF 40 at 5). Adams actually

pled that "Plaintiff was not provided adequate dental care following his severe

injuries in FDC custody and will need substantial dental care following his release.

Plaintiff has pain in the right upper part of his mouth. An x-ray showed part of a

tooth broken in the assault was missing all the way down to the nerve." (ECF 38, ¶¶

110-11). Adams also alleges, "unaddressed dental problems including broken teeth

below the gumline." (Id., ¶ 134). Also, "Plaintiff suffered broken teeth, including

teeth broken below the gumline, as wires were removed from his jaw but no dental

surgery was scheduled." (Id., ¶ 155).

These are clearly more than the "more should have been done" referenced in

*Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976), but more like the deliberate indifference

example of choosing the "easier and less efficacious treatment of throwing away the

prisoner's ear and sewing the stump." *Estelle*, 429 U.S. at 105, n.10.

**C. Movants Recognized the Need for Care but Coordinated Limitations**

Movants, with admirable candor, admit to the recognition of the need for care and the need to coordinate the care that was to be given by multiple outside providers. But the coordination was done by the Movants with an eye toward steering Adams to the site for care most economically favorable to them, and then toward breaking off the continuum of care offered by Memorial Hospital. Every phase of the care given required their approval. Clinicians can make judgment calls—even negligent ones[3] — without violating the Constitution. But that is not what happened here. This is not a matter of a "genuine, good-faith disagreement between healthcare professionals" concerning the tolerability and responsiveness of Mr. Adams's treatment. *Smith v. Ward*, 848 F. App'x 853, 857– 58 (11th Cir. 2021) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991)). Adams does not complain of a missed diagnosis or lapse of medical judgment. Instead, he claims Movants knew he had ongoing treatment needs, but deliberately delayed or denied follow-up despite subjectively knowing the need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[w]hether a prison official had the requisite [subjective] knowledge of a substantial risk is a question of fact subject to demonstration . . . from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

---

[3] Some courts have held medical negligence may rise to a constitutional violation where it involves culpable recklessness. See *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

**D. Plaintiff Alleges Failure to Provide Needed Care in Prison Placements**

While the Movants placed Mr. Adams in a prison infirmary for a time and had an initial eye care assessment done, their failure to follow up with actual needed treatment resulted in a sustained period of pain and incapacity and ultimately a substantial loss of vision. *Smith*, 848 F. App'x at 858 (explaining that in some cases mere monitoring cannot avoid imminent danger of serious injury); *McElligott*, 182 F.3d at 1257 (treatment or medication can be "so cursory as to amount to no care at all"). Instead, where Mr. Adams has alleged that the Movants' knowing denial of care for the remainder of his time in prison, he has stated a plausible claim as to their deliberate indifference. *Estrada v. Stewart*, 703 F. App'x 755, 760 (11th Cir. 2017) (quoting *McElligott*, 182 F.3d at 1257–58). Mr. Adams adequately alleges Movants were sufficiently aware of his serious medical needs to establish Eighth Amendment liability. As to his horrific wounds, see the Complaint (ECF 38, ¶¶ 56-57, 65-67). The well-pleaded allegations in the Complaint support that the perfunctory care for Plaintiff's medical needs once he was returned to prison were "so cursory as to amount to no care at all." *McElligott*, 182 F.3d at 1257. The claims are essentially that the follow-up treatment provided for Mr. Adams' amounted to no treatment. The treatment never was given. Those are viable claims under the Eighth Amendment. *Poag*, 61 F.3d at 1543 ("[K]nowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference."); *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

### E.  Plaintiff Has Pled a Link Between His Injuries and Movants' Policies

Movants also argue that Mr. Adams has not pleaded causation for his deliberate indifference claims. To state a claim for deliberate indifference under § 1983, Mr. Adams must allege a causal connection between the constitutional violation and the state actor's conduct. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted) (requiring "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"). Mr. Adams can prove involvement in the "acts that resulted in the violation of the constitutional right." *Martinez v. Burns*, 459 F. App'x 849, 851 (11th Cir. 2012).

Here, Movants don't deny knowing about Mr. Adams's need for timely follow-up care. Their apparent disagreement on whether that is negligence or deliberate indifference does not affect causation. Adams has adequately pleaded subjective knowledge. He has also pleaded that the delay seriously exacerbated his medical condition sufficient to support causation. (See *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007)). Movants rest on the fact that Plaintiff got "extensive medical treatment" at two separate hospitals. (ECF 40 at 2). It is true that Plaintiff received severe life-threatening injuries in prison and received substantial stabilizing medical care outside the prison system. Problems became critical when he returned to his prison placements and to dependence on Movants' coordination of care.

The operative Complaint satisfies the requirements to state a claim against Centurion and MHM Health for *Monell* relief. "A municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional

injury." *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020); see also *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (municipal entity itself must cause the constitutional violation).[4]

To state a *Monell* claim, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). *Monell* liability can also be based on failure to adequately train where the failure, "evidences a deliberate indifference to the rights of its inhabitants [that] can be properly thought of as a . . . policy or custom" *City of Canton v. Harris*, 489 U.S. 378, 389, (1989). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the misconduct." *Griffin v. City of OpaLocka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Municipal "liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir.

---

[4] Centurion takes on the position of a municipality for the purpose of liability here, because "[w]hen a private entity . . . contracts with a [municipality] to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and 'becomes the functional equivalent of the municipality' under section 1983." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Centurion "subcontracts with […] MHM [Health] to provide medical staffing" to Florida prisons. *Blain v. Centurion of Fla., L.L.C.*, No. 8:20-CV-49-T-24 SPF, 2020 WL 821457, at *1 (M.D. Fla. Feb. 19, 2020).

2002); see also *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (a

policy can be adopted by the entity or created by an official of such rank that "he or

she could be said to be acting on behalf of the [entity]").

Mr. Adams has sufficiently pleaded factual allegations supporting his *Monell*

claims. The Supreme Court and the Eleventh Circuit have made clear that there is no

heightened pleading standard under Rule 8(a)(2) for *Monell* claims. See *Johnson v.*

*City of Shelby*, 574 U.S. 10, 11 (2014) ("[A] federal court may not apply a standard

'more stringent than the usual pleading requirements of Rule 8(a)' in 'civil rights

cases alleging municipal liability[.]'") (citation omitted); *Hoefling v. City of Miami*, 811

F.3d 1271, 1275-76 (11th Cir. 2016) (finding no heightened pleading standard for a

*Monell* claim); *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("After *Ashcroft*

*v. Iqbal*, which applied the *Twombly* pleading standard in a civil rights/qualified

immunity context, there is no longer a heightened pleading standard in cases

governed by Rule 8(a)(2), including civil rights [cases] under § 1983[.]") (quotations

omitted)); *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("After *Iqbal* it is clear

that there is no 'heightened pleading standard' as it relates to cases governed by Rule

8(a)(2), including civil rights complaints.").

Plaintiff's Complaint satisfies this pleading standard by alleging *Monell* liability

against Centurion and MHM Health. Mr. Adams alleges that under Centurion and

MHM Health's management of healthcare delivery within FDC, the following

widespread policies exist by which prisoners receive unconstitutionally inadequate

healthcare: (a) refusal to provide adequate treatment to patients; (b) refusal to follow

discharge instructions for follow-up care; (c) failure to create sensible treatment plans

for patients whose health status requires the same; (d) failure to ensure continuity of

care; (e) prioritization of profits at the expense of constitutionally adequate care; (f)

failure or refusal to arrange for prisoners to receive timely treatment as they

approached the end of their sentence. (ECF 38 at ¶¶ 138-139).

In response, Centurion and MHM argue that Mr. Adams has not, among

other things, pleaded sufficient allegations that Centurion and MHM Health had a

policy of delaying or not providing treatment to prioritize profits. (ECF 40 at 5-9).

They assert that Mr. Adams's allegations are conclusory and fail to explain how such

considerations amount to deliberate indifference. In *Scayles v. Inch*, No. 3:19-CV-

1311-MMH-PDB, 2022 WL 35991 (M.D. Fla. Jan. 4, 2022), the court found that the

plaintiff had only rendered legal conclusions as to Centurion's policy to delay

diagnosis and treatment for patients with cardiac issues to save money. 2022 WL

35991, at *9. Here, however, Mr. Adams does assert facts sufficient under *Hoffer* to

state a claim for a policy of delayed and denied treatment.[5]

Centurion and MHM Health argue that Mr. Adams has failed to allege facts

---

[5] Courts have found allegations that the medical provider was withholding treatment for monetary concerns was sufficient to overcome a motion to dismiss. *Hayes v. Corizon Health, Inc.*, No. 4:19CV97/MW/EMT, 2020 WL 6219833, at *8 (N.D. Fla. Sept. 22, 2020), report and recommendation adopted, No. 4:19CV97-MW/EMT, 2020 WL 6206012 (N.D. Fla. Oct. 22, 2020) (finding allegation that plaintiff "did not receive necessary treatment sooner due to Centurion's custom and/or policy of cost containment" was sufficient to overcome a motion to dismiss"); *Carmichael v. Jones*, No. 4:16CV238-RH/CAS, 2017 WL 2637410, at *9 (N.D. Fla. Apr. 12, 2017), report and recommendation adopted, No. 4:16CV238-RH/CAS, 2017 WL 2636492 (N.D. Fla. June 17, 2017) (rejecting argument that allegation Corizon "promulgated a policy or custom to refuse to disclose the criteria for necessary surgery ... and to deny treatment based on prisoner age, and on the basis of cost-savings" was speculative and conclusory).

showing their policies or customs "led to" his injuries. (ECF 38 at 2, 5) They suggest

Mr. Adams has not stated a claim on this basis. As shown above, Mr. Adams has

identified policies and demonstrated that they were the moving force behind the

violations—Centurion and MHM Health did not violate established protocol; the

protocol was to delay or deny treatment to save money, among other things.

**F.  Plaintiff Has Pled a Clear Distinction Between Centurion and MHM**

Centurion of Florida, LLC, is described in Plaintiff's Complaint as a foreign

limited liability company, a subsidiary of Centene Corporation, principally located in

the State of Missouri, that has contracted with the State of Florida to provide

medical care to prisoners. (ECF 38 at ¶ 10). MHM Health Professionals, LLC, is a

subsidiary of MHM Services, Inc., which is a wholly-owned subsidiary of Centene

Corporation, and is responsible for the provision of staffing services related to the

contract with FDC managed by Centurion. (Id. at ¶ 11). Centurion and MHM work

hand-in-glove but each is a separate suable entity which has its own basis of liability

for the wrongful acts complained of in this case.

In this case, Centurion and MHM argue that Plaintiff has "lumped together"

the two companies and has failed to "ascertain which specific acts" each has

performed. (ECF 40 at 9).[6] But Plaintiff has done both. Plaintiff has distinguished

---

[6] Centurion and MHM Health assert that they are confused because Mr. Adams' *Monell* claims do not specifically identify which specific policy or custom pertains to which defendant. Mr. Adams need not determine without discovery at this stage whether the policy of delayed treatment, etc., is attributable to only Centurion, MHM Health, or both—for now his claim meets the pleading requirements by providing these defendants "sufficient clarity to frame" a response. *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n. 8 (11th Cir. 2001); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015) (trial court abused its discretion dismissing

these two actors and explained their respective roles as pilot and navigator in

reaching the destination. (See ECF 38, ¶¶ 10, 11, 132). In the case cited by Movants,

*Blain v. Centurion of Florida*, LLC et al., 2020 WL 821457, *2 (M.D. Fla. Feb. 19,

2020), in dismissing the defendants without prejudice, the court notes the complaint

did not allege that the employee at issue was hired by MHM. Here, Plaintiff makes it

clear that MHM was the employer of the medical professionals assigned to

Centurion's contract duties. Discovery should disclose the dynamic between the two

companies but clearly their roles were parallel.

As noted, Centurion contracts with the Florida Department of Corrections

(FDC). MHM contracts with Centurion to hire the individual medical providers

who, themselves, act under state law to carry out the contract terms agreed to by

Centurion. Although MHM does not directly contract with a state agency, each has

a distinct role and each acts under color of state law. In *Keith v. DeKalb Cnty., Georgia*,

749 F.3d 1034, 1053 (11th Cir. 2014), the Eleventh Circuit found that the law may

look to the medical professionals to see if there is liability for their delegated care

decisions — even when they are subcontractors such as MHM was in that case.

Although discovery will certainly shine additional light on the individuals who

had the duty to treat Plaintiff's known serious medical condition and failed to do so,

there is no question that Centurion contracted to provide necessary medical care for

Plaintiff and that MHM subcontracted with Centurion to employ medical

---

counts that were "informative enough to permit a court to readily determine if they state a claim
upon which relief can be granted").

professionals to carry out that undertaking.

## G. There Is No Doctrine Disfavoring a "Third Bite at the Apple"

Complaints about "third bites at the apple" are often found in defense memoranda but almost never in judicial opinions. Far from the eye-rolling grumbles of the Movants, courts tend to talk about the "liberal standard of Rule 15, and that amendment should be "freely granted" except where amendment would be futile or with dilatory motive. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The reason is that what Movants disparagingly call a "third bite" is often the first occasion a court has to exercise discretion on the issue of amendment. Here, the first amendment was "of right" under Fed.R.Civ.P. 15(a)(1)(B). The second amendment was within the time frame agreed by the parties for the amendment of the Complaint.[7] The amendment granted by the Court served an important practical purpose, was not futile, and did not unduly delay the proceedings.

## CONCLUSION

Many of the cases cited by Movants in their Motion to Dismiss the operative Complaint are based not on the pleadings, but on a completed record, either on summary judgment or post-trial. Thus, they are less about what was pled than what could have been proven based on the evidence presented to a court after a full and fair opportunity to conduct discovery. Opposing counsel do not oppose Plaintiff's Motion to file this response out of time. Based on the above, the Court is asked to

---

[7] The original deadline for amendment passed while the case was stayed but, even so, the parties agreed to the later date by which the motion to amend was made.

permit late filing and deny the Defendants' Rule 12(b)(6) motion to dismiss.

Respectfully submitted,   *s/ James V. Cook*
                          JAMES V. COOK, ESQ.
                          Florida Bar Number 0966843
                          Law Office of James Cook
                          314 West Jefferson Street
                          Tallahassee, FL 32301
                          Phone: (850) 222-8080
                          Email: cookjv@gmail.com

                          *s/ Chris Poulos*
                          CHRIS POULOS, ESQ.
                          Florida Bar Number 109745
                          Poulos Law Firm
                          11108 Wildlife Trail
                          Tallahassee, FL 32312
                          Phone: (850) 933-0775
                          Primary Email:
                          chris@chrispouloslaw.com
                          Secondary Email:
                          chris.poulos.9531@gmail.com
                          Counsel for Plaintiff

I CERTIFY that I have conferred in good faith with opposing counsel who DO NOT oppose Plaintiff's Motion to file this response out of time.

I CERTIFY that a true copy hereof was filed using the CM/ECF system, which will serve a copy on all counsel of record, on November 30, 2023.

By: */s/ James Cook*